AO-106 (Rev: 06/09)-Application for Search Warrant

**FILED**

# UNITED STATES DISTRICT COURT

for the

Northern District of Oklahoma

JUN 1 4 2024

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

| | |
|---|---|
| In the Matter of the Search of<br>*(1) Gray Apple iPhone and (1) Toshiba satellite laptop*<br>*S/N: YB037578K Currently Stored at Homeland Security*<br>*Investigations (HSI) Seized Property Room in Tulsa, OK* | )<br>)<br>)<br>)<br>) |

Case No. **24-mJ-417-SH**

**FILED UNDER SEAL**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the __Northern__ District of __Oklahoma__ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| **18 U.S.C. § 545**<br>**18 U.S.C. § 922(a)(1)(A)**<br>**18 U.S.C. § 922(o)** | **Smuggling Goods into the United States**<br>**Engaging in Firearms Dealing Without a License**<br>**Illegal Possession of a Machinegun** |

The application is based on these facts:
   **See Affidavit of TFO Andrew Titsworth, attached hereto**.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Andrew Titsworth*

*Applicant's signature*

TFO Andrew Titsworth, HSI

*Printed name and title*

Subscribed and sworn to by phone.

Date:  __6|14|24__

City and state:  __Tulsa, Oklahoma__

Susan E. Huntsman, U.S. Magistrate Judge

*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In the Matter of the Search of (1) Gray Apple iPhone and (1) Toshiba satellite laptop S/N: YB037578K Currently Stored at Homeland Security Investigations (HSI) Seized Property Room in Tulsa, OK | Case No. _____ <br><br> **FILED UNDER SEAL** |

### Affidavit in Support of an Application
### Under Rule 41 for a Warrant to Search and Seize

I, Andrew Titsworth, being first duly sworn, hereby depose and state as follows:

### Introduction and Agent Background

1.    I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant authorizing the examination of property- an electronic device- which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.    I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(c), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a seizure warrant.

3.    I am a Task Force Officer (TFO) with Homeland Security Investigations (HSI), within the Department of Homeland Security. As part of my duties as a HSI TFO, I investigate violations relating to Smuggling Goods into the United States,

Illegal Importation and Exportation of Firearms, Gangs, and various financial crimes. I have been a Deputy Sheriff with the Tulsa County Sheriff's Office since December 2010, prior to being assigned to the HSI Task Force. I completed the HSI TFO Title 19 training program in Lorton, Virginia, where I received training relative to general smuggling investigations, smuggling of arms and strategic technology, gangs, and various surveillance and investigative techniques. I have also received specialized training in illegal Customs importation and exportation.

4.     As a HSI TFO, I also work closely with other federal, state, and local law enforcement agencies that investigate the illegal proliferation of Glock switches and auto sears. These agencies include the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and the Tulsa Police Department (TPD). These agencies have subject matter expertise pertaining to firearms and firearm parts, including Glock switches, auto sears, suppressors, and silencers. From working with them, I have obtained training, experience, and knowledge regarding the identification, nomenclature, and functionality of Glock switches and auto sears.

5.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant.  It does not set forth all of my knowledge, or the knowledge of others, about this matter.  Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of 18 U.S.C. § 545 (Smuggling Goods into the United States),

2

18 U.S.C. § 922(a)(1)(A) (Engaging in Firearms Dealing Without a License), 18 U.S.C. § 922(o) (Illegal Possession of a Machinegun), will be located in the electronically stored information described in **Attachment B** and is recorded on the devices described in **Attachment A**.

### Identification of the Device to be Examined

6.  The property to be searched is a (1) Gray Apple iPhone and (1) Toshiba satellite laptop S/N: YB037578K. The Device is currently located at the HSI Seized Property Room in Tulsa, Oklahoma.

7.  The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in **Attachment B**.

### Jurisdiction

8.  "[A] warrant may be issued to search for and seize any property that constitutes evidence of a criminal offense in violation of the laws of the United States." 18 U.S.C. 3103a.

9.  Venue is proper because the person or property described in this affidavit is located within the Northern District of Oklahoma. Fed. R. Crim. P. 41(b)(1).

### Relevant Statutes

10. 18 U.S.C. § 545 states in relevant part:

> Whoever knowingly and willfully, with intent to defraud the United States, smuggles, or clandestinely introduces or attempts to smuggle or clandestinely introduce into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass,

through the customhouse any false, forged, or fraudulent invoice, or other document or paper; or

Whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law—Shall be fined under this title or imprisoned not more than 20 years, or both.

11. 18 U.S.C. 922(a)(1)(A) states in relevant part:

(a) It shall be unlawful— (1) for any person— (A) except a licensed importer, licensed manufacturer or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearms in interstate or foreign commerce.

12. 18 U.S.C. § 922(o) states in relevant part: "It shall be unlawful for any person to possess or transfer a machinegun."

13. "Machinegun" is defined by 26 U.S.C. § 5845(b) as:

The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

## Probable Cause

14.     Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

15.     Customs and Border Protection (CBP) must first examine and admit international mail parcels and shipments that arrive in the United States before they are delivered to the destinations by a carrier, including the United States Postal Service (USPS). CBP Officers are assigned to International Mail Facilities (IMF), like the Area Port of Dallas Dnata. CBP officers conduct routine examinations of foreign mail service parcels as the parcels enter the United States before the parcels are prepared for delivery to their final destination. Due to the large volume of cargo that enters the United States on a daily basis, CBP is unable to examine all parcels. CBP uses a variety of methods to select parcels for border examination, including random and targeted inspections. CBP officers who find prohibited items inside examined packages take note of specific information about the package, such as the sender, addressees, consignees, commodity descriptions, and weight.  This information is stored in databases maintained by CBP and is retained for future reference.

16.     Under normal circumstances, international mail packages are accompanied by a customs declaration that describes the package's contents. These declarations are stored in law enforcement databases accessible by CBP and HSI. Based on this information, CBP officers target packages that match certain specified criteria.

5

17.     Pursuant to their authority under Title 19, Code of Federal Regulations, Section 162.6 (also known as "Border Search Authority"), CBP officers and certain other law enforcement officers may conduct examinations of goods entering the United States without a search warrant, probable cause, or individualized suspicion.[1]

18.     Based on my training and experience as a HSI TFO who investigates the illegal importation and proliferation of firearms and firearm components, including speaking with other investigators who are knowledgeable about Glock switches and auto sears and who conduct similar investigations, I know the following:

a.   A Glock conversion switch is a device that allows a standard Glock handgun to be converted into an illegal and fully automatic machinegun. Conversion is simple and requires removing the Glock polymer slide cover and replacing it with the conversion device. Once installed, the conversion fully automatic is complete. A machinegun is a firearm under the National Firearms Act (NFA), 26 U.S.C. § 5845(a). A machinegun is defined, in pertinent part, as "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun." The switch device is a part, or combination of parts, designed and intended for use in converting a semiautomatic Glock pistol into a machinegun and is designed solely and

---

[1] I am also aware of the following case law holding that searches at the border do not require probable cause or a warrant. *United States v. Ramsey*, 431 U.S. 606, 619 (1977); see also *United States v. Cotterman*, 709 F.3d 952 (9th Cir. 2013) (en banc) (holding that turning on, opening, and viewing contents of a digital device at the border while the passenger waited to enter the United States was reasonable even without particularized suspicion.)

exclusively for such purpose; therefore, the switch alone is a "machinegun." It is illegal to possess the switch even without it being attached to a handgun.

b. Despite being commonly referred to as "Glock switches," the Glock company does not manufacture Glock switches. Instead, Glock manufactures only one firearm model that is capable of fully automatic firing. The selector switch on the model that enables it to fire fully automatically is built into its pistol slide and is not removable. Genuine fully automatic Glock firearms are highly restricted items that generally may be sold and possessed only to law-enforcement agencies and branches of the United States military. See 18 U.S.C. § 922 (o) (2); 27 C.F.R. § 479.105 (a).

c. Although Glock switches vary in design and appearance, when installed on a semi-automatic, Glock-style handgun, a Glock switch allows the firearm to expel multiple rounds of ammunition by a single pull of the trigger at a rapid rate.

19.    On March 22nd, 2024, Customs and Border Protection (CBP) Area Port of Dallas Dnata[2] Centralized Examination Station (CES) team conducted an examination of a shipment with Entry[3]#: NTQ-73502373, Bill Of Laden#: 618-

---

[2] Dnata is the name of a bonded warehouse in the Port of Dallas that contains a customs examination station.
[3] The Customs and Border Protection Entry # is an official statement of specific information regarding the imported merchandise. The Customs entry form lists information like County of origin and a description of the goods.

67685122-6300858435, arriving from China, with a final destination in the Northern District of Oklahoma of 10859 East 33rd Ct Tulsa, OK 74146 and manifested as "TOOL TRACK TOOLS, WEDGES, OTHER HANDTOOLS, PARTS, OTHER, OTHER. The consignee on the parcel was listed as "Aymn G" which agents believe to be Ayman Maher Marco Elias (hereinafter "ELIAS"). The shipment had a total declared value of $20.00 and was contained within 1 package, weighing approximately .018 kg. Glock switches were found in and seized from the package, and a photograph of which is displayed below:



20.     The package was observed to be sealed with no signs of tampering. Database queries on the consignee yielded negative results. Database queries on the shipper yielded positive results for prior seizures. The package was inspected resulting in the discovery of six (6) Machinegun conversion devices (Glock Switches) and three (3) novelty coins. From my training and experience, I know the devices pictured above are Glock switches. There were no manufacturer markings or serial numbers on the Glock switches. The package was detained as a violation of the National Firearms Act.

21.     This shipment consists of non-commercially branded firearm conversion components imported from China through express consignment and international mail facilities with a declared value of $2,500 or less which are in violation of 27 CFR 447.52 and 22 CFR 126.1, and the National Firearms Act. The contents of this shipment were seized pursuant to 19 USC 1595a(c)(1)(C).

22.     A search of law enforcement databases indicate ELIAS and Maher Elias (DOB XX/XX/1952) listed 10859 East 33rd Ct Tulsa, OK (herein after "the Premises") as their home address on their Oklahoma Driver's Licenses.

23.     Surveillance conducted on May 12, 2024, at 10859 East 33rd Ct Tulsa, OK revealed a maroon Honda sedan with license plate Oklahoma LHJ899 parked in the driveway. The vehicle was last registered on March 29, 2024, to ELIAS at 10859 East 33rd Ct Tulsa, OK. Surveillance conducted on May 15, 2024, of 10859 East 33rd Ct Tulsa, OK revealed a white Honda Ridgeline with Oklahoma license plate

NEQ911. The Honda Ridgeline was last registered on March 29, 2024, to ELIAS at 10859 East 33rd Ct Tulsa, OK.

24.     A review of prior international shipments revealed that on May 3, 2024, a shipment from SHENZHEN SUNYOU CROSS BORDER L was shipped to 10859 East 33rd Ct Tulsa, OK addressed to Ayman ELIAS, and that shipper has previously been identified by HSI and CBP as a shipper of NFA items to the United States. As of May 15, 2024, there have been 102 shipments from this shipper seized or detained by the United States. The shipments from SHENZHEN SUNYOU CROSS BORDER L seized or detained consisted of ninety-two (92) shipments of auto sears, six (6) shipments of suppressors, and four (4) shipments of a combination of other NFA items.

25.     Further review revealed that on March 2, 2024, a parcel manifested with the same description as the seized parcel of Glock switches, from the same shipper and address in China, and weighing similar entered the United States and was not seized, which leads investigators to believe this was another Glock switch which was delivered to the 10859 East 33rd Ct Tulsa, OK. Additionally, three different shipments on 01/19/2024, 02/12/2024, and 03/01/2024 were found imported to 10859 East 33rd Ct Tulsa, OK, addressed to Ayman ELIAS. The shipper of the three shipments is XING REN TRADE CO LTD, which HSI and CBP have identified as a known shipper of Glock switches, suppressors, and auto sears.  One such example would be a shipment on January 5, 2024, MAWB# 272-73894041 coming from China, which was targeted for examination. The parcel was targeted for suspected Glock switches.

The shipper of the parcel is XING REN TRADE CO LTD Qing Nian Lu NO 17 Beijing, China 100000. The parcel was destined to Silver Creek, MS. CBP stationed at the John F. Kennedy International Airport responded to the Gemini Express Transport bonded warehouse in Jamaica, NY. The parcel was manifested as "Vacuum Parts," however upon examination, one (1) drop in auto sear was discovered and seized by CBP.

26.    On May 23, 2024, HSI TFO Titsworth applied for and was granted a federal search and seizure warrant in the Northern District of Oklahoma, for ELIAS residence 10859 East 33rd Court Tulsa, Oklahoma (24-MJ-382-CDL). On May 28, 2024, HSI Tulsa executed the search and seizure warrant and recovered a gray Apple iPhone, Toshiba Satellite laptop S/N: YB037578K, a black unbranded firearm suppressor with no serial number, cue cards with firearms descriptions with prices, and over 2.5 kg of marijuana.

27.    The gray Apple iPhone and Toshiba Satellite Laptop S/N: YB037578K were both located on a nightstand in ELIAS's bedroom. These devices are the subject of this search warrant application, Typically, individuals involved with smuggling of goods into the United States use their personal devices to contact individuals in other countries to complete the action of having contraband such as Glock switches, sent to the United States. The individuals also use their personal devices to market the items to other conspirators involved with firearms trafficking.

28.    During the search agents and officers located a large green canvas bag, inside the bag agents found small white pieces of paper. The pieces of paper had

11

firearms listed and prices, an example would be "Mac-10 upper open bolt 750$", and "intratec DC9 Tec9 1350$". At least eight empty Glock cases were located in the garage, while possession of the Glock cases in itself is not a crime, the presence of multiple empty cases makes investigations believe that ELIAS may be in business of selling fully-automatic Glock pistols, which would explain the importation of Glock auto sear switches.

29.   From my training and experience, I know the following to be true:

a.   Individuals who smuggle goods into the United States typically do so with the assistance of others.  Smugglers often use their cell phones, tablets, computers, and the internet to communicate with their suppliers and customers.  Records of these communications and the contact information of the other members of the conspiracy are often saved in the individual's phone.

b.   Individuals in the United States often purchase Glock conversion devices from distributors located in China using online marketplaces.  Upon agreement on the type; the quantity; and the price of the device, the purchaser is then directed to send payment to an individual in China. Upon receipt of the payment in China, the distributor then ships the contraband to the United States.  The packages are then introduced into the United States by means of false and misleading statements written on Customs declarations, and then are subsequently delivered to the purchaser.  Customers often receive an emailed receipt from the

transaction from the online marketplace and/or their chosen electronic payment method.

c. Individuals who possess firearms usually possess other items related to firearms, such as gun cases, ammunition, ammunition magazines, holsters, spare parts, cleaning equipment, photographs of firearms, and receipts for the purchase of these items.

d. From my training and experience, I know it is common for individuals who illegally possess firearms and ammunition to conceal firearms and ammunition in secure locations within their residence, motor vehicles, and other real property over which they have dominion and control.

e. Additionally, I know that the unlawful possession of a firearm is often a conspiratorial crime. Individuals who illegally obtain firearms often do so with the help of others who may purchase, steal, or provide firearms to them. Individuals who are prohibited from possessing firearms may communicate with individuals who are not prohibited for the purpose of having someone who can "hold" for them, or quickly take custody of the firearm to help them avoid detection and arrest by law enforcement.

f. These individuals often use personal cell phones, tablets, computer, and similar electronic devices ("Devices") in the commission of their crimes.

g. These individuals commonly take photographs (or cause photographs to be taken) of themselves, their associates, their property and their

contraband and firearms, and that these individuals, and usually take or store these photographs using their Devices.

h. The Devices may contain evidence of the purchase of Glock conversion switches in the form of electronic receipts, shipping confirmation emails, parcel tracking information, and payment receipts.   A review of the Devices browser history, cookies, and related logs may provide evidence of the purchase and sale of contraband using online marketplaces.

i. An examination can reveal the approximate location of the Devices and the user by associating a specific date and time with: historical GPS data, historical cell-site data, and logs of Wi-Fi networks.   Additionally, an examination can reveal the Devices' unique identifiers (phone number, IMEI, IMSI, etc.).   These unique identifiers can be used to compel material records from the cell phone service provider such as call logs, billing information, and historical cell-site data.

j. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

**Electronic Storage and Forensic Analysis**

30.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.   Similarly, things that have been

viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

31.     There is probable cause to believe that things that were once stored on the Devices may still be stored there, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form

of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

32. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

e. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.

f. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to

16

the search for "indicia of occupancy" while executing a search warrant at a residence.

g. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

h. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

i. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

33. This warrant seeks authorization for a review of electronic storage media seized, electronically stored information, communications, other records and information seized, copied, or disclosed pursuant to this warrant in order to locate any evidence, fruits, and instrumentalities of violations of the above-listed federal criminal

17

statutes. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, HSI may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

34. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

## Conclusion

35. Based on the information set forth in this affidavit, I submit that there is probable cause to believe that 18 U.S.C. § 545 (Smuggling Goods into the United States), 18 U.S.C. § 922(a)(1)(A) (Engaging in Firearms Dealing Without a License), 18 U.S.C. § 922(o) (Illegal Possession of a Machinegun) have been violated, and that evidence, instrumentalities, contraband, and/or fruits of this offense, more fully described in Attachment B, are located at the sites described in Attachment A.I respectfully request that this Court issue search warrants for the devices in Attachment A, authorizing the search and seizure of the items described in Attachment B.

36.     I request to be allowed to share this affidavit and the information obtained from this search with any government agency, to include state and local agencies investigating or aiding in the investigation of this case or related matters, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions from this matter.

37.     Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

Respectfully submitted,

*Andrew Titsworth*

Andrew Titsworth
Task Force Officer
Homeland Security Investigations

Subscribed and sworn to by phone on the 14th day of June, 2024.

SUSAN HUNTSMAN
UNITED STATES MAGISTRATE JUDGE

19

## ATTACHMENT A

### Property to be Searched

1.      The property to be searched is a **(1) Gray Apple iPhone and (1)**

**Toshiba satellite laptop S/N: YB037578K**, hereinafter the Device". The Device is

currently located at Homeland Security Investigations (HSI) Seized Property Room,

Tulsa, OK.

2.      This warrant authorizes the forensic examination of the Device for the

purpose of identifying the electronically stored information described in Attachment

B.

**3.      (1) Gray Apple iPhone:**



**4.** **(1) Toshiba satellite laptop S/N: YB037578K:**





## ATTACHMENT B

### Particular Things to be Seized

Evidence relating to violations of 18 U.S.C. § 545 (Smuggling Goods into the United States), 18 U.S.C. § 922(a)(1)(A) (Engaging in Firearms Dealing Without a License), 18 U.S.C. § 922(o) (Illegal Possession of a Machinegun), Specifically:

1.    Records relating to communication with others as to the criminal offense(s) listed above; including incoming and outgoing voice messages; text messages; emails; multimedia messages; applications that serve to allow parties to communicate; all call logs; secondary phone number accounts, including those derived from Skype, Line 2, Google Voice, and other applications that can assign roaming phone numbers; and other Internet-based communication media;

2.    Records relating to documentation or memorialization of the criminal offense(s) listed above, including voice memos, photographs, videos, and other audio and video media, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos, including device information, geotagging information, and information about the creation date of the audio and video media;

3.    Records relating to the planning and execution of the criminal offense(s) above, including Internet activity, firewall logs, caches, browser history, and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any

Internet search engine, records of user-typed web addresses, account information, settings, and saved usage information;

4.    Application data relating to the criminal offense(s) listed above.

5.    Threatening communications related to the criminal offense(s) listed above;

6.    All bank records, checks, credit card bills, account information, and other financial records. Records relating to financial data, to include bank records, checks, credit card bills, account information, and other financial records, electronically stored records showing proof of residence, proof of storage unit use and/or rentals, additional properties owned or documents reflecting stash houses, real estate transaction documents, rental agreements or documents, as well as automotive sale or purchase or financing documents, electronically stored documents purporting to indicate income or salaries received reflecting employment, hours worked, wages earned, withholdings, electronically stored records showing secret clientele lists, business associates, and diversification of wealth, United States Currency, any other electronically stored tangible items evidencing the obtaining, transfer, secreting, and/or concealment of assets and/or money, electronically stored records, documents, receipts, and/or negotiable instruments which evidence the purchase of negotiable instruments and/or the structuring of currency transactions to avoid the filing of currency transactions reports and/or the laundering of monetary instruments, electronically stored documents evidencing fruits, instrumentalities, monies, records, and notations, associated with the crime(s) listed above.]

7.     Evidence of user attribution showing who used or owned the Device(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, phone books, saved usernames and passwords, documents, and browsing history;

8.     All records and information related to the geolocation of the Device(s) and travel in furtherance of the criminal offense(s) listed above; and

9.     All records and information related to the coordination, agreement, collaboration, and concerted effort of and with others to violate the criminal statutes listed above.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form. the government, attorney support staff, and technical experts.